UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

No. 15-1608

———————

SOLERS, INC.,

        Plaintiff - Appellant,

    v.

INTERNAL REVENUE SERVICE,

        Defendant - Appellee.

———————

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria. Leonie M. Brinkema,
District Judge. (1:14-cv-01548-LMB-JFA)

———————

Argued: March 24, 2016          Decided: June 30, 2016

———————

Before WILKINSON and NIEMEYER, Circuit Judges, and David C.
NORTON, United States District Judge for the District of South
Carolina, sitting by designation.

———————

Affirmed by published opinion. Judge Niemeyer wrote the
opinion, in which Judge Wilkinson and Judge Norton joined.

———————

**ARGUED:** Mariam Wagih Tadros, REES BROOME, PC, Tysons Corner,
Virginia, for Appellant. Gretchen M. Wolfinger, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON
BRIEF:** Robert J. Cunningham, Jr., REES BROOME, PC, Tysons
Corner, Virginia, for Appellant. Caroline D. Ciraolo, Acting
Assistant Attorney General, Jonathan S. Cohen, Tax Division,
UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Dana
Boente, United States Attorney, OFFICE OF THE UNITED STATES
ATTORNEY, Alexandria, Virginia, for Appellee.

NIEMEYER, Circuit Judge:

In this action, Solers, Inc., a Virginia corporation, challenges the IRS' response to its request for documents under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. The IRS identified 261 pages that were responsive to Solers' request and ultimately produced unredacted copies of all but 12 pages. Solers challenged the IRS' reasons for withholding 6 of those pages and for producing 4 other pages with redactions.

After reviewing the documents <u>in camera</u>, the district court sustained the IRS' position and granted the IRS summary judgment. For the reasons that follow, we affirm.

I

Solers, an information technology company, was audited by the IRS for its 2010 tax year, and, pursuant to the audit, the IRS proposed adjustments to Solers' tax liability and potential penalties. Not long after the IRS closed the audit, Solers submitted a FOIA request to the IRS for all documents in the IRS' administrative file pertaining to its tax liabilities and potential penalties for the 2010 tax year, specifically requesting "[d]ocuments, notes, and internal IRS correspondence" related to (1) the IRS' audit; (2) the IRS' notice of proposed tax adjustment; (3) Solers' response to the notice; (4) Solers' protest of the proposed adjustment; (5) the quality control that

was performed on the notice of proposed adjustment; and (6) guidance received by two IRS agents regarding "intentional disregard penalties." Solers also requested all correspondence between specified individuals that related to it.

The IRS located 261 pages that were responsive to Solers' request and initially provided Solers with most of these pages, withholding 26 pages and producing 32 pages with redactions.

Solers commenced this action, alleging that the IRS was unlawfully withholding records and seeking an order requiring it to disclose "any redacted materials to the extent that those materials are not subject to a proper exemption under 5 U.S.C. § 552." After Solers filed its complaint, the IRS determined that 17 of the 26 pages previously withheld could be released in full; that 3 additional pages previously withheld could be released with redactions; and that 29 of the 32 redacted pages could be released in full. Solers eventually agreed that the IRS had properly redacted 2 pages, leaving only 10 pages at issue in this case -- 6 pages that the IRS withheld and 4 pages that it produced with redactions.

At the outset of the proceedings, Solers filed a motion to obtain a Vaughn index -- a list describing the documents withheld and information redacted and giving detailed information sufficient to enable a court to rule on whether the withholdings fall within a FOIA exemption. See Rein v. U.S.

*Patent & Trademark Office*, 553 F.3d 353, 357 n.6 (4th Cir. 2009); *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). The district court granted the motion in part, directing the IRS "to provide all information required in a *Vaughn* index" for each document withheld or produced with redactions.

Thereafter, the parties filed cross-motions for summary judgment, and, in support of its motion, the IRS attached two affidavits from one of its attorneys that provided the following information about the 10 pages withheld or redacted:

1. <u>Handwritten Notes</u>: Four of the six withheld pages are handwritten notes made by Revenue Agent Arun Sharma, the agent primarily responsible for conducting Solers' examination, during a conversation he had with Solers' accountant on April 25, 2013. According to the IRS attorney, the notes "consist[] of [Agent Sharma's] thoughts, impressions, and [indicate the] possible direction of the examination." The IRS attorney also stated that "[n]o decision was made at that time with regard to the issues discussed by Revenue Agent Sharma and the CPA, and the examination was not closed until almost a year later on March 4, 2014." The IRS withheld the 4 pages of notes pursuant to the deliberative process privilege that is incorporated into 5 U.S.C. § 552(b)(5) ("Exemption 5"). The IRS attorney also stated that he had "determined that [the notes] do not contain any segregable information."

2. <u>Summary Report</u>: The IRS also withheld a one-page summary report prepared by Agent Sharma on October 16, 2013. The report discusses Agent Sharma's "review of returns of certain individual third-party taxpayers, whose tax returns were considered in conjunction with [Solers'] examination." The IRS withheld the summary report pursuant to 5 U.S.C. § 552(b)(3)

("Exemption 3"), in conjunction with 26 U.S.C. § 6103(a), as well as Exemption 5's deliberative process privilege; it also maintained that portions of the report were subject to withholding under § 552(b)(6) and (7)(C) ("Exemptions 6 and 7(C)").

3. <u>Graph</u>: The IRS also withheld a one-page graph prepared by Agent Sharma on July 30, 2012. Agent Sharma generated the graph "from the [IRS'] yk-1 database, which stores information about which individuals and entities are related to each taxpayer. The graph shows the identity of third-party individuals and entities whose tax returns were considered in conjunction with [Solers'] examination." The IRS withheld the graph in full pursuant to Exemption 3, in conjunction with 26 U.S.C. § 6103(a), and Exemption 5's deliberative process privilege; it also maintained that portions of the graph were subject to withholding under Exemptions 6 and 7(C).

4. <u>Checksheet</u>: The IRS produced most of a "Closed Case Review Checksheet," which was completed by Agent Sharma's manager on March 13, 2014, making a redaction only on a line of the form identifying "related returns." The IRS attorney stated that the agency had redacted only the portion of the checklist "that reflects the identity of a third party whose return information was considered in conjunction with [Solers'] examination." The IRS maintained that the redaction of this third-party information was justified under Exemption 3, in conjunction with 26 U.S.C. § 6103(a), as well as Exemptions 6 and 7(C).

5. <u>Activity Record</u>: The IRS also redacted a single entry from one page of Agent Sharma's activity record. The IRS attorney stated that the deleted entry, from July 9, 2013, reflects that Agent Sharma "communicated with the IRS Office of Chief Counsel with respect to a specific issue in the examination," explaining that "disclosure of [the redacted entry] would reveal an area of the exam for which the revenue agent sought legal advice." The IRS invoked Exemption 5's incorporation of

the attorney-client privilege to justify the
redaction.

6. <u>Two Emails</u>: Finally, the IRS also redacted from
two emails "the names and contact information of
[IRS] personnel consulted in connection with
[Solers'] examination." Both emails were sent
from the IRS Specialist Referral System to
Revenue Agent Dennis Cohen, an agent "who worked
on [Solers'] exam prior to Revenue Agent Sharma."
The first email, dated July 12, 2012, indicates
that Agent Cohen had requested a consultation
with a Computer Audit Specialist and a Tax
Computation Specialist; from this email, the IRS
redacted the names and contact information of the
managers to whom the requests were referred. The
second email, dated July 16, 2012, informed Agent
Cohen that his request for a Computer Audit
Specialist had been assigned; from this email,
the IRS redacted the name and contact information
of the Computer Audit Specialist who had been
assigned to consult on the case, as well as the
name of the manager who had made the assignment.
The IRS maintained that its redactions of these
emails were justified under Exemptions 6 and
7(C).

Before the hearing on the parties' cross-motions for
summary judgment, the district court directed the IRS to submit
unredacted copies of the 10 pages at issue for <u>in camera</u> review.
And at the hearing, the court ruled, based on the record and its
<u>in camera</u> review, that the IRS' withholdings were justified. As
a preliminary matter, the court ruled that because it had
"thoroughly reviewed" the records "directly," Solers' challenge
to the sufficiency of the IRS' <u>Vaughn</u> index was no longer an
issue. And as to the 10 withheld or redacted pages, the court
concluded: (1) that the IRS had properly withheld four pages

consisting of the agent's handwritten notes, based on Exemption 5, 5 U.S.C. § 552(b)(5), because the notes "reflect the mental processes of the revenue agent and [his] thoughts on [the] possible direction of the investigation"; (2) that the IRS had properly withheld the graph and summary report, based on Exemption 3, id. § 552(b)(3), and 26 U.S.C. § 6103(a), because "[t]hose two documents . . . contain identifying information for third parties"; and (3) that the IRS had properly redacted "identifying information of other individuals" from the checksheet and the two emails, based on Exemptions 6 and 7(C), 5 U.S.C. § 552(b)(6), (7)(C). The court accordingly entered judgment for the IRS.

From the court's judgment dated May 15, 2015, Solers filed this appeal.

## II

As a general, preliminary matter, Solers contends that the IRS "produced generic and inadequate affidavits that provide[d] no justification for the withholding of any document," thereby "disregard[ing]" the district court's order that the IRS provide all information required in a Vaughn index. It argues that because the IRS failed to provide a sufficiently detailed justification for withholding the documents, it "was thwarted" in its efforts to challenge those withholdings and that this

failure remained meaningful even after the district court's <u>in</u> <u>camera</u> review because "the district court's ruling from the bench . . . did not provide Solers with a detailed analysis and rationale regarding its decision to sustain the [IRS'] claimed exemption[s]."  In essence, Solers challenges the sufficiency of the IRS' <u>Vaughn</u> index.

Solers' argument, however, fails to appreciate the role of a <u>Vaughn</u> index.  A <u>Vaughn</u> index is "designed to enable <u>the</u> <u>district court</u> to rule on a privilege without having to review the document itself" and thus functions as "a <u>surrogate</u> for the production of documents for <u>in</u> <u>camera</u> review."  <u>Ethyl Corp. v.</u> <u>U.S. EPA</u>, 25 F.3d 1241, 1249 (4th Cir. 1994) (emphasis added); <u>see also</u> <u>Rein</u>, 553 F.3d at 366 (describing a proper <u>Vaughn</u> index as a "substitute for <u>in</u> <u>camera</u> review").

In this case, because the district court reviewed the documents <u>in</u> <u>camera</u>, it correctly concluded that its own "thorough[] review[]" had "completely eradicated" "any issue about an inadequate <u>Vaughn</u> Index."  Stated otherwise, the issue of whether the IRS provided a <u>Vaughn</u> index sufficient to enable the district court to evaluate the IRS' claimed exemptions became irrelevant and moot after the IRS complied with the district court's order to produce the records for <u>in</u> <u>camera</u> review and the court completed its own review of the records.

Turning next to the merits of Solers' challenge to the IRS' withholdings, FOIA requires generally that federal agencies make their internal records available to the public upon request. See 5 U.S.C. § 552(a)(3)(A). The Act, however, exempts certain categories of records from disclosure. See id. § 552(b)(1)-(9) (listing what are referred to as Exemptions 1 through 9). If an exemption applies only to a portion of a document, FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided . . . after deletion of the portions which are exempt." Id. § 552(b).

In this case, the IRS relied on Exemptions 3, 5, 6, and 7(C) to withhold or redact the 10 pages at issue. We address the IRS' claimed exemptions in the following four categories: (1) the agent's handwritten notes; (2) the summary report, graph, and checksheet; (3) the activity record; and (4) the two emails.

A. The Agent's Handwritten Notes

The first category consists of four pages of handwritten notes made by Revenue Agent Arun Sharma during a conversation he had with Solers' accountant on April 25, 2013. To justify withholding the notes, the IRS relied on Exemption 5's incorporation of the deliberative process privilege, 5 U.S.C. § 552(b)(5), maintaining that the notes "consist[] of [Agent

Sharma's] thoughts, impressions, and [indicate the] possible direction of the examination." The IRS also took the position that the notes "do not contain any segregable information."

Upholding the IRS' position, the district court observed that, while the notes were very difficult to read, they were nonetheless covered by the deliberative process privilege "because they do represent the [agent's] thought process," adding that they "reflect the mental processes of the revenue agent and [his] thoughts on [the] possible direction of the investigation."

Solers contends that the information with which it has been provided about the notes does not establish the notes' "deliberative" nature, leaving unclear whether "the notes were somehow related to the process by which any agency policy was formulated" or "whether the notes played a role in reaching an agency decision." Solers also asserts that the IRS "did not provide any information to support its conclusion that the documents were not segregable."

Exemption 5 shields "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "Among the privileges Exemption 5 encompasses are the attorney-client privilege . . . and the deliberative process privilege." Rein, 553 F.3d at 371. And

the deliberative process privilege, on which the IRS relies to withhold the notes, "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8-9 (2001). The privilege thus "encourages free-ranging discussion of alternatives; prevents public confusion that might result from the premature release of such nonbinding deliberations; and insulates against the chilling effect likely were officials to be judged not on the basis of their final decisions, but for matters they considered before making up their minds." City of Virginia Beach v. U.S. Dep't of Commerce, 995 F.2d 1247, 1252-53 (4th Cir. 1993) (internal quotation marks and citation omitted).

To justify application of the deliberative process privilege, "the government must show that, in the context in which the materials [were] used, the documents [were] both predecisional and deliberative." City of Virginia Beach, 995 F.2d at 1253 (internal quotation marks and citation omitted). Predecisional documents are those "prepared in order to assist an agency decisionmaker in arriving at his decision," Renegotiation Bd. v. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 184 (1975), and deliberative documents are those that "reflect[] the give-and-take of the consultative process by revealing the

11

manner in which the agency evaluates possible alternative policies or outcomes," City of Virginia Beach, 995 F.2d at 1253 (internal quotation marks and citation omitted). The privilege thus protects "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Id. (emphasis added) (internal quotation marks and citation omitted). But the privilege "does not protect a document which is merely peripheral to actual policy formation; the record must bear on the formulation or exercise of policy-oriented judgment." Ethyl Corp., 25 F.3d at 1248. In addition, "since the prospect of disclosure is less likely to make an advisor omit or fudge raw facts than opinions, purely factual material does not fall within the exemption unless it is inextricably intertwined with policymaking processes such that revelation of the factual material would simultaneously expose protected deliberation." City of Virginia Beach, 995 F.2d at 1253 (internal quotation marks and citations omitted).

In this case, after the district court conducted its in camera review and its review of the sworn statement of an IRS employee, it concluded that the four pages of handwritten notes "represent the key or salient points that that agent was writing down" and "reflect the mental processes of the revenue agent and [his] thoughts on [the] possible direction of the

investigation." The court also determined that the four pages could be withheld in their entirety, effectively ruling that there were no segregable portions that could be produced.

We conclude that the district court's factual findings regarding the content of the notes are amply supported by the record -- which includes the IRS representative's statement that the four pages of notes "consist[] of [Agent Sharma's] thoughts, impressions, and [indicate the] possible direction of the examination" -- and therefore are not clearly erroneous. See Ethyl Corp., 25 F.3d at 1246 (noting that, in FOIA cases, "factual conclusions . . . are reviewed under a clearly erroneous standard"). Moreover, because the notes were the agent's preliminary evaluation of issues implicated by the audit, the court did not err in concluding that they were predecisional and deliberative, thus satisfying the criteria for withholding them under Exemption 5. See Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs., 849 F. Supp. 2d 13, 38 (D.D.C. 2012) ("Handwritten notes may be deliberative or part of the agency's deliberative process where they contain the author's opinions, analysis, or impressions of the event he or she describes"); Carter, Fullerton & Hayes LLC v. FTC, 520 F. Supp. 2d 134, 144 (D.D.C. 2007) (upholding agency's invocation of the deliberative process privilege to withhold "a set of handwritten notes of a senior FTC employee taken during

meetings" based on agency's description of the notes as "representing the employee's 'thoughts and impressions' of the meeting"); <u>Judicial Watch, Inc. v. Clinton</u>, 880 F. Supp. 1, 13 (D.D.C. 1995) (concluding that "handwritten notes reflecting preliminary thoughts of agency personnel" were covered by the deliberative process privilege). We also affirm the district court's implicit ruling that there are no segregable portions of the notes subject to production.

### B.  The Summary Report, Graph, and Checksheet

The other two pages withheld in full are (1) a summary report prepared by Agent Sharma on October 16, 2013, describing the process and results of his review of tax returns for certain individual third-party taxpayers, which he conducted in connection with the Solers' audit; and (2) a graph prepared by Agent Sharma on July 30, 2012, which he generated from a database that "stores information about which individuals and entities are related to each taxpayer" and which "shows the identity of third-party individuals and entities whose tax returns were considered in conjunction with [Solers'] examination." The IRS also produced a "Closed Case Review Checksheet" form with one line on the document redacted, explaining that it had redacted that portion of the checksheet because it reflected "the identity of a third party whose return information was considered in conjunction with [Solers']

14

examination." The IRS contends that its withholdings with respect to these three pages are justified by Exemption 3 and 26 U.S.C. § 6103(a).

Exemption 3 protects from disclosure information that is "specifically exempted from disclosure by [a] statute" "(i) requir[ing] that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establish[ing] particular criteria for withholding or refer[ring] to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). And 26 U.S.C. § 6103 "is a statute contemplated by FOIA Exemption 3." Tax Analysts v. IRS, 410 F.3d 715, 717 (D.C. Cir. 2005) (internal quotation marks and citation omitted). That statute prohibits the disclosure of "[r]eturns and return information . . . except as authorized by [Title 26]," 26 U.S.C. § 6103(a), and it defines the term "return information" as including "a taxpayer's identity . . . [and] whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing," although the term "does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer," id. § 6103(b)(2).

We conclude that, although the summary report does not specifically name third-party individuals whose tax returns were considered in conjunction with Solers' audit, the individuals'

15

identities could easily be discerned from the report or any segregable portion of it, therefore justifying its being withheld. Likewise, because the graph and checksheet specifically identified third-party individuals and entities, we conclude that the IRS acted properly in withholding the graph and redacting one line from the checksheet.

In an effort to avoid this conclusion, Solers asserted for the first time during oral argument that four of its employees had authorized the IRS to release their tax return information to Solers, pursuant to 26 U.S.C. § 6103(c), and that the IRS was therefore not entitled to rely on Exemption 3 and § 6103(a) to withhold records insofar as they relate to those third parties. It is well settled, however, "that contentions not raised in the argument section of the opening brief are abandoned." United States v. Al-Hamdi, 356 F.3d 564, 571 n.8 (4th Cir. 2004) (citing Edwards v. City of Goldsboro, 178 F.3d 231, 241 n.6 (4th Cir. 1999)). Moreover, the record reflects that after the IRS noted to the district court that Solers' employees had failed to submit the proper authorization forms, Solers made no effort to counter this representation. In these circumstances, Solers' efforts to obtain tax documents identifying third parties are unavailing.

## C.  The Activity Record

The IRS produced the relevant portions of Agent Sharma's activity record, a document similar to a time sheet, with a single entry on one page redacted.  The IRS explained that the deleted entry reflected that Agent Sharma "communicated with the IRS Office of Chief Counsel with respect to a specific issue in the examination," adding that "disclosure of [the redacted entry] would reveal an area of the exam for which the revenue agent sought legal advice."  The IRS relied on Exemption 5's incorporation of the attorney-client privilege to justify this redaction, and the district court agreed with the IRS.

Solers contends mainly that the entry should not have been redacted because "the subject matter of an attorney-client communication is not privileged."

While, as Solers contends, "the general purpose of the work performed [by an attorney] [is] usually not protected from disclosure by the attorney-client privilege because such information ordinarily reveals no confidential professional communications between attorney and client," In re Grand Jury Subpoena, 204 F.3d 516, 520 (4th Cir. 2000) (internal quotation marks and citation omitted), the privilege nonetheless shields from disclosure "the specific nature of the legal advice sought by [the client]," In re Grand Jury Subpoena, 341 F.3d 331, 335 (4th Cir. 2003); see also id. (holding that, while the fact that

an attorney "provid[ed] advice regarding an immigration matter" would not be privileged, a question "specifically ask[ing] whether [the client] consulted with Counsel about the preparation of [a particular immigration form]" sought information protected by the attorney-client privilege). Accordingly, we conclude that the attorney-client privilege justifies the IRS' limited redaction of the activity report so as to keep confidential the specific issues on which Revenue Agent Sharma sought legal advice while working on the audit.

### D.   The Two Emails

Finally, the IRS made redactions to two emails that it produced, withholding the names and contact information of certain IRS personnel who were consulted in connection with Solers' audit.   The IRS maintained that the redactions were justified under Exemptions 6 and 7(C), and the district court agreed.

Exemption 6 specifies that FOIA's disclosure requirement does not apply to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."   5 U.S.C. § 552(b)(6).   The Supreme Court has instructed that the phrase "similar files," as used in Exemption 6, should be given "a broad, rather than a narrow, meaning," explaining that "[w]hen disclosure of information which applies to a particular individual is sought

from Government records, courts must determine whether release of the information would constitute a clearly unwarranted invasion of that person's privacy." U.S. Dep't of State v. Washington Post Co., 456 U.S. 595, 600, 602 (1982). And to determine whether an invasion of privacy would be "clearly unwarranted," courts employ a balancing test that weighs the individual's privacy interests against the public interest in disclosure. The public interest is served to "the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" U.S. Dep't of Defense v. Fed. Labor Relations Auth., 510 U.S. 487, 497 (1994) (alteration in original) (quoting Dep't of Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 773 (1989)).

A similar analysis applies with respect to the application of Exemption 7(C), which allows agencies to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

In this case, Solers does not dispute that the redacted information was contained in "personnel and medical files and similar files," within the meaning of Exemption 6, or that the

redacted information was "compiled for law enforcement purposes," within the meaning of Exemption 7(C). Rather, it contends that the district court did not adequately consider whether the release of the names and contact information of these IRS employees would constitute "even a general invasion of privacy" and that it failed to "weigh Solers' right to review its tax documents against the asserted privacy interests."

We conclude, however, that the district court struck the right balance in permitting these email redactions. On the one side of the scale, IRS employees, as well as other government employees, "have a substantial interest in the nondisclosure of their identities and their connection with particular investigations because of the potential for future harassment, annoyance, or embarrassment." Neely v. FBI, 208 F.3d 461, 464-65 (4th Cir. 2000); see also Judicial Watch, Inc. v. United States, 84 F. App'x 335, 339 (4th Cir. 2004) (unpublished) (concluding that "the privacy interest protected by Exemption 6 encompasse[s] . . . the names of federal employees," including "lower-level I.R.S. employees"). But, on the other side of the scale in this case, the record contains no indication that disclosing the names and contact information of these IRS employees would serve the public interest. See Neely, 208 F.3d at 464 (recognizing that the public interest in the names of government employees alone "would appear to be negligible"

20

absent a "compelling allegation of agency corruption or illegality"). Accordingly, we conclude that the district court did not err in holding that the IRS employees' interest in maintaining the privacy of their names and contact information outweighed the public interest in the disclosure of this information.

The judgment of the district court is accordingly

AFFIRMED.